**FILED**

JUL 3 0 2010

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EMMANUEL N. LAZARIDIS, individually,
    and on behalf of
V. L., a minor, in his capacity as her legal custodian

       Smyrnis 14
       71305 Heraklion, Crete
       GREECE
       +30 693.902.7351

    Plaintiffs,

v.

UNITED STATES DEPARTMENT OF STATE,
  by and through Hillary R. Clinton,
  Secretary of State,

       2201 C Street, N.W.
       Washington, DC  20520

    Defendant.

)
)
)
)

Case: 1:10-cv-01280
Assigned To : Collyer, Rosemary M.
Assign. Date : 7/30/2010
Description: FOIA/Privacy Act

)
)
)
)
)    COMPLAINT FOR ORDER TO
)    PRODUCE RECORDS
)    PURSUANT TO THE FREEDOM
)    OF INFORMATION ACT
)
)
)
)
)
)
)



RECEIVED

JUL 12 2010

Clerk, U.S. District and
Bankruptcy Courts

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EMMANUEL N. LAZARIDIS, individually,            )
    and on behalf of            )
V. L., a minor, in his capacity as her legal custodian,            )
                )
    Plaintiffs,            )            Case No. _____
                )
v.            )
                )
UNITED STATES DEPARTMENT OF STATE,            )            COMPLAINT FOR ORDER TO
    by and through Hillary R. Clinton,            )            PRODUCE RECORDS
    Secretary of State,            )            PURSUANT TO THE FREEDOM
                )            OF INFORMATION ACT
    Defendant.            )
                )

## COMPLAINT

    The plaintiffs, Emmanuel N. Lazaridis and the minor child V. L. in his sole custody and care, allege as follows:

### NATURE OF COMPLAINT

1.    This is an action for relief pursuant to the Freedom of Information Act (5 U.S.C. § 552, "FOIA"). The plaintiffs seek to compel the defendant to release records concerning the plaintiffs personally.

### PARTIES

2.    The first plaintiff, Emmanuel N. Lazaridis, is an adult citizen of the Hellenic Republic (a/k/a Greece) and the United States, primarily domiciled in Heraklion, Crete, Greece

where he lives with his first minor child, of whom he is the general guardian or like

fiduciary under the law of the District of Columbia.

3.　　The second plaintiff, V. L., is a minor, a citizen of the Hellenic Republic and the United

States who lives openly and legally with her father in Heraklion, Crete, Greece.

4.　　Defendant United States Department of State ("DOS") is a Department of the Executive

Branch of the government of the United States.  The DOS is an agency within the meaning

of 5 U.S.C. § 552(f).

## JURISDICTION AND VENUE

5.　　This Court has subject matter jurisdiction over this case pursuant to 5 U.S.C. § 552(a)(4)

(B) (FOIA).

6.　　Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) in that a

substantial part of the events or omissions giving rise to the claims occurred in this judicial

district, and pursuant to 5 U.S.C. § 552(a)(4)(B) in that the defendant is located in this

judicial district and under its personal jurisdiction.

## STATEMENT OF FACTS

*FOIA requests of 2006 to DOS:*

7.　　On or about April 4, 2006 the first plaintiff submitted on behalf of himself and the second

plaintiff two requests to the DOS for records concerning the plaintiffs, pursuant to the

Privacy Act 1974 and the FOIA ("the 2006 Requests").

8. The records sought in the aforesaid two requests were "written, audio, video or electronic records" under the control of DOS about or concerning the first plaintiff, or about or concerning the second plaintiff, dating from 2002 to 2006.

9. The 2006 Requests were initially granted in part, and records were released in seven stages between August 10, 2006 and October 16, 2007.

10. The first and second sets of documents were released on or about August 10 and July 19, 2006 respectively. No identified pages were withheld. The defendant's decision to redact a minor amount of text in some of these documents was not appealed.

11. The third set of documents was released on or about December 14, 2006. One document was released in full and two were released with excisions. The plaintiffs' request for release of seven additional documents was denied in full.

12. The fourth set of documents was released on or about January 12, 2007. One document was released in full and nine were released with excisions. The plaintiffs' request for release of two additional documents was denied in full.

13. The plaintiffs appealed the denial of full release of the third and fourth sets of documents on or about February 20, 2007 ("First Appeal").

14. The fifth set of documents was released or about February 8, 2007. It consisted of one document that was released in full.

15. The sixth set of documents was released on or about March 9, 2007. Twenty-five documents were released in full and nine were released with excisions.

16. The plaintiffs appealed the denial of full release of the sixth set of documents on or about May 7, 2007 ("Second Appeal").

17. The seventh set of documents was released on or about October 16, 2007. One document was released in full, and six were released with excisions. One additional document was referred to the F.B.I. for review and direct reply to the plaintiffs. The remaining seventeen identified documents were alleged to require intra-agency coordination. It is not clear whether such coordination was ever undertaken by the DOS.

18. The plaintiffs appealed the denial of full release of the seventh set of documents on or about November 24, 2007 ("Third Appeal").

19. Upon consideration of the First Appeal, additional portions of three excised documents were released. The remaining excisions and denials were retained.

20. Upon consideration of the Second Appeal, the previously-withheld portions of one document were released. The remaining excisions were retained.

21. Upon consideration of the Third Appeal, no additional information was released.

22. On or about December 8, 2009 a "further response" to the First Appeal from the DOS was sent to the plaintiffs, which stated as follows:

> "This office has been advised by the Department of Justice that you are a fugitive from justice. The Department of State does not honor requests (or related appeals) for documents made by individuals who are currently fugitives."
>
> -- Denial of December 8, 2009 with respect to appeal no. 2006-1695

***FOIA requests of 2007/2008 to DOS:***

23.   On or about November 30, 2007 the first plaintiff submitted on behalf of himself and the second plaintiff two requests to the DOS for records concerning the plaintiffs, pursuant to the Privacy Act 1974 and the FOIA ("the 2007 Requests").

24.   The records sought in the aforesaid two requests were "written, audio, video or electronic records" under the control of the DOS about or concerning the first plaintiff, or about or concerning the second plaintiff, dating from April 4, 2006 to the end of 2007.

25.   When no response was forthcoming from the DOS, the first plaintiff submitted on behalf of himself and the second plaintiff two additional requests to DOS for records concerning the plaintiffs, on or about March 16, 2008 ("the 2008 Requests").

26.   The DOS never responded to the 2008 Requests.

27.   By letter dated February 25, 2008, the DOS indicated that it would initiate processing of the 2007 Requests.

28.   A first set of documents responsive to the 2007 Requests was released to the plaintiffs on or about May 30, 2008.  Four documents were released in full.

29.   A second set of documents responsive to the 2007 Requests was released to the plaintiffs on or about June 3, 2008.  One document was released in full.  An additional two documents were released with excisions.

30.   No further response to the 2007 and 2008 Requests has been forthcoming from the DOS.

31.   On or about March 9, 2009 the first plaintiff wrote to the DOS to inform the defendant that
      no further correspondence had been received with respect to the 2007 and 2008 Requests,
      and to request an explanation for the lack of progress.

32.   The DOS never responded to the correspondence of March 9, 2009.

*The first plaintiff has never been a "fugitive from justice":*

33.   On September 5, 2002 V. L. was abducted from Europe by her mother, in collaboration
      with officials of the United States, and transported to the State of Michigan in violation of
      the laws of the United Kingdom and France.

34.   On or about September 26, 2002 the Circuit Court of Ottawa County, Michigan committed
      the child's mother to psychiatric care and granted temporary guardianship of V. L. to her
      maternal grandparents.

35.   At 11 A.M. on October 31, 2002 the said Letters of Guardianship expired.

36.   On November 4, 2002 the first plaintiff was granted full "legal and physical custody" of
      the second plaintiff in an emergency court proceeding.

37.   Immediately thereafter the second plaintiff was "voluntarily" returned to the first plaintiff
      by the Sheriff of Ottawa County himself, with her mother's full acquiescence.

38.   "On November 4, 2002, an Ottawa County [Michigan] Court granted Emmanuel
      temporary custody of V. L.  Emmanuel immediately left Michigan with V. L., eventually
      relocating in Greece." *Lazaridis v. Wehmer*, Civ. No. 06-793-SLR, 2007 U.S. Dist. LEXIS
      57733 (D. Del., Aug. 8, 2007) at **1, vacated and remanded by *Lazaridis v. Wehmer*,

2008 U.S. App. LEXIS 17752 (3d Cir., Aug. 15, 2008).

39.   The plaintiffs left Michigan on November 4, 2002 and have never returned to that State.

40.   The plaintiffs left the United States on or about November 6, 2002.

41.   It has never been contended that the plaintiffs' act of leaving the United States on or about

November 6, 2002 and returning to their residences in Greece and the Dominican Republic

was in violation of any state or federal law.

42.   "In September 2003... the Ottawa County Court determined that it lacked jurisdiction over

the child custody dispute..." *Lazaridis v. Wehmer*, Civ. No. 06-793-SLR, *supra*, at **1.

43.   The September 29, 2003 Opinion and Order of the Ottawa County Circuit Court

specifically held that it had only exercised "temporary emergency jurisdiction" on

November 4, 2002. *Lazaridis v. Lazaridis*, 02-44799-DC (MAF) (Mich. 20th Cir. Sept. 29,

2003).  "A court of this state has temporary emergency jurisdiction if the child is present in

this state and the child has been abandoned or it is necessary in an emergency to protect the

child because the child, or a sibling or parent of the child, is subjected to or threatened with

mistreatment or abuse." *Mich. Comp. Law* § 722.1204(a) (section 204 of the UCCJEA).

44.   Thereafter the Prosecutor of Ottawa County requested that a federal investigation

commence, stating in his Memo of November 26, 2003: "Custody order claims Ottawa

County does not have jurisdiction, therefore, no valid court order to proceed w/

kidnapping. Pursue kidnapping under Federal jurisdiction ~ statute is broader."

45. However, internal FBI documents uncovered with the assistance of Judge Collyer's Memorandum Opinion of May 26, 2010 in *Lazaridis v. DOJ*, No. 1:09-cv-01177 in this District demonstrate that the real impediment to bringing a prosecution against the first plaintiff was not a lack of jurisdiction but a "lack of evidence" of any criminality on the part of the first plaintiff.:

> "Detective Robert Donker, Ottawa County Sheriff's Department, was contacted about the child custody matter concerning V. L.  Detective Donker confirmed that he has investigated the matter and was familiar with Judge Feyen's rulings.  Detective Donker met with the Ottawa County Prosecutor regarding possible criminal charges against Emmanuel Lazaridis for interfering with parental custody.  Detective Donker advised that Ottawa County would not seek criminal charges due to lack of evidence."
>          -- December 9, 2003 official FBI report

46. On September 6, 2004, the divorce of the first plaintiff from his former spouse was pronounced by the Civil and Commercial Chamber of the Court of First Instance of the Dominican Republic, and full custody of V. L. was vested in the first plaintiff thereby.

47. On or about October 7, 2004, a Michigan warrant for the arrest of the first plaintiff was issued based exclusively on the *ex parte* registration of a June 19, 2004 French child custody order in the Circuit Court of Ottawa County by V. L.'s mother, which French order purported to assign the residence of V. L. to the residence of her mother. *Lazaridis v. Wehmer*, Civ. No. 06-793-SLR, *supra*, at **5 ("... the French Court orders which awarded custody of V. L. to his former wife... were the impetus of the felony arrest warrant...").

48. In 2005 DOJ refused Michigan's request to bring charges against the first plaintiff for unlawful flight to avoid prosecution (18 U.S.C. § 1073) or under the federal international

parental kidnapping statute (18 U.S.C. § 1204). Specifically, in late 2005 Assistant United

States Attorney Margaret Chiara ("AUSA") convened a grand jury in the Western District

of Michigan, called witnesses, and gathered evidence to determine whether any crime was

committed in the context of the removal or retention of V. L. abroad. This investigation

did not result in any finding of probable violation of federal law, the grand jury refused to

indict the first plaintiff, and AG thereafter declined to prosecute him:

> "I will call you on Monday to talk in detail about these Blue and Yellow notices...
> However, please be advised that the case agent... called me last week to inquire as to the
> procedure to cancel these notices. The AUSA declined prosecution on the case and she
> is going to close the investigation. She also told me that the mother of the child plans to
> travel to Greece to take matters into her own hands... The case agent said she would not
> be surprised if the mother shows up at the US Embassy or the FBI door when her plan
> fails... I looked into the case and it appears that the Greek authorities confronted the
> father in Greece and he provided some sort of legal documentation... that the authorities
> considered acceptable and therefore did not take custody of the daughter..."
>
>      -- May 6, 2006 internal FBI e-mail

49.    After three years of insisting on his constitutional right to representation in the Ottawa

County criminal case, on August 8, 2007 the first plaintiff was finally appointed a defence

attorney: Thomas Smith of The Smith Law Firm.

50.    Attorney Smith then obtained discovery materials from the Prosecutor of Ottawa County

and discussed with him the prosecution's theory of the case, verifying that the first plaintiff

was never accused of committing any crime prior to December 1, 2002:

> "I am a Michigan licensed attorney practicing law in Holland, Michigan (Ottawa
> County). I was appointed by the 58th District Court in Holland, Michigan in August
> 2007 to represent the defendant in the above captioned case [People v. Emmanuel N.
> Lazaridis]. I have received and reviewed many documents provided by the Ottawa
> County Prosecutor's Office. I have attended several negotiation meetings with the

prosecutor assigned to the case.  The prosecutor's legal theory of prosecution, as best I understand what has been presented to me up to this point in time, does not allege that defendant committed the charged crime (kidnapping-custodial interference, MCL 750.35a(1)) before December 1, 2002.  In fact, the legal complaint in this case lists the date of offense as on or about "01/06/2003."  The prosecutor has told me that, although he can and may change the date of offense on the complaint, he is unaware of any evidence showing that defendant committed the charged crime before December 1, 2002 – and thus he does not indend to change the date of offense on the complaint to any date before December 1, 2002."

> -- May 6, 2008 Statement of Attorney Thomas Smith

51.   On June 18, 2008 the Single-Member Penal Court of Heraklion, Crete exonerated the first

plaintiff of the charge of kidnapping or custodial interference with respect to the removal

of his child from the United States to Greece in 2002:

> "Sitting in judgment adversarially against the accused, Emmanuel Lazaridis, son of Anastasios, it pronounces him innocent of the act alleged to him, the violation of paragraph and article 324 § 1 of the Code of Penal Procedure, which took place in the State of Michigan, U.S.A. in December of 2002."
>
> > -- Excerpt of Order No. 7105/08 (in translation):

Article 324 § 1 of the Code of Penal Procedure of the Hellenic Republic states as follows:

> "One who abducts a minor from his parents, guardians or any person with legal right to his care, or one who aids the voluntary escape of a minor from the authority of such persons shall be punished by imprisonment for not more than three years."
>
> > -- INTERPOL translation from the Greek Code of Penal Procedure available at
> > http://www.interpol.int/public/Children/Missing/NationalLaws/mcGreece.asp

52.   The mother of V. L. was subsequently convicted of multiple counts of criminal libel on

June 26, 2008 and January 19, 2009.

53.   By order dated June 14, 2010 the Court of Appeal of Lyon, France held that <u>France had</u>

<u>been without jurisdiction in the dispute since at least May 27, 2004</u>, that is, at least one

month before the June 29, 2004 French ruling underlying Michigan's warrant was issued.

54. Consequently, the June 29, 2004 French child custody ruling was void *ab initio*.

55. Michigan's decision ordering enforcement of the void June 29, 2004 French child custody order pursuant to its Uniform Child Custody Jurisdiction and Enforcement Act was clearly issued *per incuriam*, and is itself entirely void by consequence of reliance upon the void French ruling, as is the Ottawa County criminal proceeding which relies upon it.

### *The first plaintiff is the second plaintiff's sole legal custodian and her general guardian in accordance with the law of this District:*

56. "In September 2003... the Ottawa County Court determined that it lacked jurisdiction over the child custody dispute..." *Lazaridis v. Wehmer*, Civ. No. 06-793-SLR, *supra*, at **1.

57. The September 29, 2003 Opinion and Order of the Ottawa County Circuit Court specifically held that it had only exercised "temporary emergency jurisdiction" on November 4, 2002. *Lazaridis v. Lazaridis*, 02-44799-DC (MAF) (Mich. 20th Cir. Sept. 29, 2003). "A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." *Mich. Comp. Law* § 722.1204(a) (section 204 of the UCCJEA).

58. No State of the United States has any subject-matter jurisdiction over the matter of custody and care of V. L., nor has any State obtained or exercised personal jurisdiction over the plaintiffs at any time after November 4, 2002.

59. On September 6, 2004, the divorce of the first plaintiff from his former spouse was pronounced by the Civil and Commercial Chamber of the Court of First Instance of the

Dominican Republic, and full custody of V. L. was vested in the first plaintiff thereby.

60. "Lazaridis also apparently filed for divorce in the Dominican Republic. On May 16, 2005, a Greek court recognized the Dominican divorce order." *Lazaridis v. Wehmer*, Civ. No. 06-793-SLR, *supra*, at **2.

61. By order dated December 16, 2005 the Family Court of the State of Delaware, at the request of V. L.'s mother, accepted the Dominican divorce and its Greek registration as having effected her divorce from the first plaintiff.

62. Because the French case proceeded in violation of the jurisdictional requirements of European law and specifically of European Council Regulation No. 1347/2000, as confirmed by the June 14, 2010 French decision, the French courts decided neither the divorce nor related parental responsibility disputes.

63. On November 8, 2008 the mother of V. L. married Brian Keith Golm in Allegan County, Michigan, in apparent reliance on the Dominican child custody and divorce order.

64. Greek child custody orders of January 31 and April 27, 2007 *et seq.* renewed sole custody of V. L. in the first plaintiff, forbade the child's permanent removal from Heraklion, and fixed a visitation schedule for the American mother.

65. The January 31, 2007 Greek child custody order is in effect throughout Europe pursuant to European Council Regulation No. 2201/2003.

66. On May 19, 2009 the Greek Authority for the Protection of Personal Data, an independent tribunal under Greek law, ruled as follows (in translation):

"Emmanuel Lazaridis, as a personal data subject... has the right to access pursuant to article 12 of law no. 2472/1997 to personal data that concern him directly and personally.  In addition, Emmanuel Lazaridis assumes the role of a data subject also with respect to personal data that concern his eight year old daughter, since by order of the Single-Member First Instance Court of Heraklion he has her custody and care..."

-- Excerpt of APDPH Decision no. G/EX/3147/19-05-2009

67. By order dated June 14, 2010 the Court of Appeal of Lyon, France held that the Greek jurisdiction of Heraklion, Crete is competent to recognize the divorce of the parents of the second plaintiff, and to rule in all matters of parental responsibility, to the exclusion of any French court.

68. Consequently, the first plaintiff is now recognizable as V.L.'s general guardian consistent with European law and the law of this District.

## FIRST CAUSE OF ACTION
### (The First Appeal Was Improperly Determined)

69. Paragraphs 1 to 68 are re-alleged and incorporated herein by reference.

70. The law of this circuit is clear: a person who has not been arraigned on criminal charges and is physically located outside the United States cannot be a fugitive from justice at common law unless he was present in the jurisdiction of the state that accuses him of committing a crime at the time of crime alleged. *Richards v. Matthews*, 207 F.2d 227, 241 (D.C. Cir. 1953) ("... the accused must not only be validly charged with a crime against a state, he must be a fugitive from that state, he must have fled from it; the expression used in many cases is that he must have left the state after committing the crime, or after it was alleged to have been committed."); *Moncrief v. Anderson*, 119 U.S. App. D.C. 323, 342

F.2d 902, 904 (D.C. Cir. 1964) ("Fugitivity means presence in the demanding state when the crime was allegedly committed.").  As Justice Holmes observed almost a century ago, although "acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if [the foreign actor] had been present at the effect, ... it does not follow that [such a person] is a fugitive from justice." *Strassheim v. Daily*, 221 U.S. 280, 285 (1911).  *See also Collazos v. United States*, 368 F.3d 190, 202, 203 (2d Cir. 2004); *United States v. Schreiber*, 535 F. Supp. 1359, 1363 (S.D.N.Y. 1982); *United States v. All Funds on Deposit in Any Accounts Maintained at Merrill Lynch, Pierce, Fenner & Smith*, 801 F. Supp. 984, 998 (E.D.N.Y. 1992); *In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, (S.D.N.Y. 2001); *Mitchell v. Obenski*, 134 Fed. Appx. 548, 2005 U.S. App. LEXIS 11292 (3d Cir. Pa. 2005).

71. The DOS wrongly withheld agency records covered by the First Appeal because the first plaintiff was never a fugitive from justice, since he was not present in Michigan at the time of the crime alleged.

72. Although the case of *Lazaridis v. The Herald Co.*, Case No. 5:05-CV-111, 2006 U.S. Dist. LEXIS 5627 (W.D. Mich., January 26, 2006) was dismissed by application of the fugitive disentitlement doctrine, the question of whether the first plaintiff was at that time a common-law fugitive under the *Strassheim* rule was not addressed to the court.  It must be recalled that the first plaintiff's constitutional right to counsel under the Sixth Amendment was only recognized by the District Court of Ottawa County on August 8, 2007, after

*Lazaridis v. The Herald Co.* had already been decided.  The first plaintiff is now able to

demonstrate that he has never been accused of having committed a crime on the one day

that he was actually in the State of Michigan, namely, on November 4, 2002.  Thus the

case of *Lazaridis v. The Herald Co.* was wrongly decided.  In *Lazaridis v. Wehmer*, 288

Fed. Appx. 800, 2008 U.S. App. LEXIS 17752 (3d Cir., August 1, 2008) the Court of

Appeals for the Third Circuit recently declined to rule on whether or not the first plaintiff

was ever a fugitive, but it also refused to apply the doctrine of fugitive disentitlement.

73.  The DOS wrongly withheld the agency records covered by the First Appeal because it

knew on or before May 6, 2006 that the first plaintiff was not a possible subject of criminal

prosecution and that no criminal prosecution would be compromised by its compliance

with the plaintiffs' FOIA requests.

74.  The DOS wrongly withheld the agency records covered by the First Appeal because there

is an "absence of a demonstrable connection" between the status of the first plaintiff as a

fugitive or otherwise and the plaintiffs' FOIA requests.  *See Lazaridis v. DOJ*, No. 1:09-cv-

01177 (D.C. Dist., May 26, 2010) (Collyer, R. M., Memorandum Opinion).

75.  The DOS knows that there was never any probable cause to support a criminal complaint

against the first plaintiff.

76.  The DOS knows that the first plaintiff is innocent of any crime.

77.  Only a putative criminal may become a fugitive.  An person who has been conclusively

determined to be innocent of a charge cannot become a fugitive because of it.

78.   The DOS wrongly withheld the agency records covered by the First Appeal specifically to

      cover up the liability of its agents under the principle of *Bivens*.

79.   The DOS wrongly invoked subsection (j)(2) of the Privacy Act and subsections (b)(6) and

      (b)(7)(A) of the FOIA in denying the full and unedited release of the documents covered

      by the First Appeal.

## SECOND CAUSE OF ACTION
### (The Second Appeal Was Improperly Determined)

80.   Paragraphs 1 to 79 are re-alleged and incorporated herein by reference.

81.   Although the "further response" sent to the plaintiffs on or about December 8, 2009 by the

      DOS was purported to apply specifically to the First Appeal, the said letter clearly

      enunciated a policy of the DOS towards the plaintiffs that was subsequently applied to all

      their other administrative FOIA appeals and ongoing FOIA requests.

82.   The DOS wrongly withheld agency records covered by the Second Appeal because the

      first plaintiff was never a fugitive from justice.

83.   The DOS wrongly withheld the agency records covered by the Second Appeal because it

      knew on or before May 6, 2006 that the first plaintiff was not a possible subject of criminal

      prosecution and that no criminal prosecution would be compromised by its compliance

      with the plaintiffs' FOIA requests.

84.   The DOS wrongly withheld the agency records covered by the Second Appeal because

      there is an "absence of a demonstrable connection" between the status of the first plaintiff

      as a fugitive or otherwise and the plaintiffs' FOIA requests.

85. The DOS wrongly withheld the agency records covered by the Second Appeal specifically to cover up the liability of its agents under the principle of *Bivens*.

86. The DOS wrongly invoked subsection (b)(6) of the FOIA in denying the full and unedited release of the documents covered by the Second Appeal.

## THIRD CAUSE OF ACTION
### (The Third Appeal Was Improperly Determined)

87. Paragraphs 1 to 86 are re-alleged and incorporated herein by reference.

88. The DOS wrongly withheld agency records covered by the Third Appeal because the first plaintiff was never a fugitive from justice.

89. The DOS wrongly withheld the agency records covered by the Third Appeal because it knew on or before May 6, 2006 that the first plaintiff was not a possible subject of criminal prosecution and that no criminal prosecution would be compromised by its compliance with the plaintiffs' FOIA requests.

90. The DOS wrongly withheld the agency records covered by the Third Appeal because there is an "absence of a demonstrable connection" between the status of the first plaintiff as a fugitive or otherwise and the plaintiffs' FOIA requests.

91. The DOS wrongly withheld the agency records covered by the Third Appeal specifically to cover up the liability of its agents under the principle of *Bivens*.

92. The DOS wrongly invoked subsection (b)(6) of the FOIA in denying the full and unedited release of the documents covered by the Third Appeal.

## FOURTH CAUSE OF ACTION
### (The 2007 and 2008 Requests Were Improperly Handled)

93.   Paragraphs 1 to 92 are re-alleged and incorporated herein by reference.

94.   The DOS wrongly withheld agency records covered by the 2007 and 2008 Requests because the first plaintiff was never a fugitive from justice.

95.   The DOS wrongly withheld the agency records covered by the 2007 and 2008 Requests because it knew on or before May 6, 2006 that the first plaintiff was not a possible subject of criminal prosecution and that no criminal prosecution would be compromised by its compliance with the plaintiffs' FOIA requests.

96.   The DOS wrongly withheld the agency records covered by the 2007 and 2008 Requests because there is an "absence of a demonstrable connection" between the status of the first plaintiff as a fugitive or otherwise and the plaintiffs' FOIA requests.

97.   The DOS wrongly withheld the agency records covered by the 2007 and 2008 Requests specifically to cover up the liability of its agents under the principle of *Bivens*.

98.   The DOS wrongly omitted to comply with the 2007 and 2008 Requests within a reasonable period of time and wrongly omitted to provide notice in writing to the plaintiffs of the reasons for its delay, in violation of 5 U.S.C. § 552(a)(6).

**WHEREFORE**, the plaintiffs pray judgment against the defendant and request that the Court

(a) grant comity to the June 18, 2008 Order No. 7105/08 of the Single-Member Penal Court of Heraklion, Crete, Greece, and thereby declare that the first plaintiff has been found

innocent of kidnapping V. L. from the United States or retaining V. L. outside the United

States between November 2002 and May 2006;

(b) declare that the first plaintiff has never been a fugitive from justice from the United

States or from the State of Michigan, according to the binding precedent of this Circuit;

(c) order the defendant to provide to the plaintiffs all materials in the defendant's control that

may be covered by the 2006, 2007 and 2008 FOIA Requests, regardless of the location or

possessor of those materials;

(d) grant comity to the January 31 and April 27, 2007 Greek child custody orders and

recognize the effect of the June 14, 2010 French appellate decision, whereby to declare

that the first plaintiff is the general guardian of V. L. under the law of this District;

(i)  grant the costs of suit herein incurred; and

(j)  grant such other and further relief as the Court may deem just and proper.


Respectfully submitted,



_____  Dated:  July 1, 2010

Emmanuel N. Lazaridis

## TABLE OF CONTENTS

| Page | Section |
|---|---|
| 1 | Nature of Complaint |
| 1 | Parties |
| 2 | Jurisdiction and Venue |
| 2 | Statement of Facts |
| 2 | FOIA requests of 2006 to DOS |
| 5 | FOIA requests of 2007/2008 to DOS |
| 6 | The first plaintiff has never been a "fugitive from justice" |
| 11 | The first plaintiff is the second plaintiff's sole legal custodian and her general guardian in accordance with the law of this District. |
| 13 | CLAIM ONE: The First Appeal Was Improperly Determined |
| 16 | CLAIM TWO: The Second Appeal Was Improperly Determined |
| 17 | CLAIM THREE: The Third Appeal Was Improperly Determined |
| 18 | CLAIM FOUR: The 2007 and 2008 Requests Were Improperly Handled |