**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| EMMANUEL N. LAZARIDIS, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-1280 (RMC) |
| | ) | |
| UNITED STATES DEPARTMENT OF STATE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

In this action brought *pro se* under the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552, plaintiff Emmanuel N. Lazaridis seeks records maintained by the Department of

State ("DOS") "concerning the plaintiffs personally."[1]  Compl. [Dkt. 1] ¶ 1.  Specifically, Mr.

Lazaridis is challenging DOS's responses to his FOIA requests allegedly submitted in April

2006, November 2007, and March 2008.[2]  *See* Compl. ¶¶ 7-32.  DOS has moved for summary

---

[1]   Although Mr. Lazaridis purports to sue also on behalf of his minor daughter, V.L., this Court has previously determined that he lacks standing to sue on her behalf, *see Lazaridis v. U.S. Dep't of Justice*, 713 F. Supp. 2d 64, 67 (D.D.C. 2010), and it finds no reason to depart from that determination here.  Thus, this action is considered as brought only by Mr. Lazaridis.  In addition, it bears repeating that this FOIA action concerns only Mr. Lazaridis's FOIA requests submitted to the State Department in 2006, 2007 and 2008.  The Court will not address any arguments or resolve any disputed facts that do not bear directly on the agency's handling of those FOIA requests.  *See* Mem. Op. and Order at 4, n.2 (Feb. 16, 2012) [Dkt. 22].

[2]   Mr. Lazardis states that he resubmitted the November 2007 request on March 16, 2008, "[w]hen no response was forthcoming."  Compl. ¶ 25.  Since it is clear from the record that  DOS

judgment under Federal Rule of Civil Procedure 56.  *See* Def.'s Renewed Mot. for Summ. J. [Dkt. 25].  Mr. Lazaridis has opposed the motion and has cross moved for summary judgment. *See* Resp. in Opp'n to Def. U.S. Dep't of State's Mot. for Summ. J. and Renewed Cross-Mot. for Summ. J. [Dkt. 30].  Upon consideration of the parties' submissions and the relevant parts of the record, the Court will grant in part and deny in part DOS's motion for summary judgment and will deny Mr. Lazaridis's cross-motion for summary judgment.

## I.  BACKGROUND

1. The 2006 Request

By letter of April 4, 2006, Mr. Lazaridis requested from the State Department "written, audio, video or electronic records" pertaining to him and his minor child, V.L.  2nd Decl. of Margaret P. Grafeld ("Grafeld Decl.") [Dkt. 25-1], Ex. 1.  In addition to DOS's "central location," plaintiff identified DOS's Office of Children's Issues, DOS's Passport Services Office of Research and Liaison, the United States Consulate in Lyon, France, and the United States Embassies in Paris, France, and Athens, Greece, as locations that may have responsive records. *Id.*  By letter of July 19, 2006, the Office of Passport Services ("OPS") released to Mr. Lazaridis in their entirety three documents concerning V.L.  *Id.*, Ex. 6.

In addition to OPS files, DOS searched the files of the Central Foreign Policy Records ("CFPR"), the Office of the Legal Adviser ("OLA"), the Office of Overseas Citizens Services ("OCS"), the American Embassies in Athens and Paris, the American Consulate General in Marseille, and the American Consulate in Lyon.  *Id.* ¶ 13 & Ex. 7.  By letter of

---

has responded to the original request, any claim based on the duplicate request submitted in March 2008 is considered moot.

August 10, 2006, DOS released four documents located in the CFPR, two containing redactions. DOS withheld information "about another person" under FOIA exemption 6.  *Id*., Ex. 7 .

By letter of December 14, 2006, DOS informed Mr. Lazaridis that it had located at OPS 11 documents in his name.  It released one document in its entirety and two documents with redactions.  DOS withheld seven documents, and referred one document to the office from which it originated for review.  It withheld information under FOIA exemptions 2, 5, and 6.  *Id*., Ex. 8.  By letter of February 8, 2007, DOS released a document in full that OPS had referred to the Bureau of Diplomatic Security.  *Id*., Ex. 10.

By letter of January 12, 2007, DOS released 10 of 12 documents located at the American Embassy in Athens, nine of which contained redactions.  DOS withheld two documents in full. DOS withheld information under FOIA exemptions 6 and 7(A).  *Id*., Ex. 9.

By letter of March 9, 2007, DOS released all 34 documents located at the American Embassy in Paris and the American Consulate in Lyon, nine with redactions.  *Id*., Ex. 13.  By letter of October 16, 2007, DOS informed Mr. Lazaridis that an additional search of the embassies in Athens and Paris located 25 more documents.  It released one document in full and six documents with redactions.  DOS referred one document to another agency and held 17 for "intra-agency coordination."  *Id*., Ex. 16.  DOS withheld information from both releases under FOIA exemption 6 as pertaining to "other persons."

Mr. Lazaridis lodged separate appeals of the foregoing determinations with the Appeals Review Panel.  *See id*., Ex. 11 (referencing Dec. 14, 2006, and Jan. 12, 2007 decisions); Ex. 14 (referencing Mar. 9, 2007, decision); Ex. 17 (referencing Oct. 16, 2007, decision).  As a result of  Mr. Lazaridis's first appeal "for the release of two documents withheld in full and nine documents withheld in part," the Appeals Panel released "additional portions of three documents

previously withheld in part," and upheld the redaction of information from six documents and the withholding of two documents. *Id.*, Ex. 19. As a result of Mr. Lazaridis's second appeal, challenging the release of nine redacted documents, the Appeals Panel released "the previously withheld portions of one document," and upheld the withholding of third-party information from "the other eight documents." *Id.*, Ex. 20.

    2. The 2007 Request

        By letter of November 30, 2007, Mr. Lazaridis requested the same records from DOS that he had requested on April 4, 2006. 2d Grafeld Decl. ¶ 24. Following searches of the same filing systems, DOS made the following releases.

        By letter of April 25, 2008, DOS released two passport records "in the name of your daughter VL" with redactions made pursuant to FOIA exemption 6. *Id.*, Ex. 26.

        By letter of May 30, 2008, DOS released all four documents pertaining to Mr. Lazaridis located in the CFPR. *Id.*, Ex. 31.

        By letter of June 3, 2008, DOS released three CFPR documents pertaining to V.L., two with redactions pursuant to exemption 6. *Id.*, Ex. 27.

        By letter of June 17, 2008, DOS released six passport documents pertaining to Mr. Lazaridis, five with redactions. *Id.* ¶ 32.[3]

        By letter of June 29, 2011, DOS released 12 of 13 documents "regarding your daughter, V" located at the American Embassy in Paris, six with redactions, and withheld one document. *Id.*, Ex. 28. In addition, DOS released eight of 11 documents located at the U.S.

---

[3]  Ms. Grafeld cites exhibit 32, but neither exhibit 32 nor exhibit 33 (cited in paragraph 33 of the declaration) is part of this record. Although these apparently inadvertent omissions do not materially affect the outcome of this case, the Defendant is directed to place the missing exhibits in the record.

Consulate in Lyon, one with redactions, and withheld three documents.  *Id*.  DOS withheld third-party information under exemption 6.  *Id.*

By letter of June 29, 2011, DOS released 17 of 21 documents "regarding your daughter, V" located at the American Embassy in Athens, eight with redactions, and withheld four documents.  It withheld information pursuant to exemptions 5, 6, 7(C), and 7(E).  *Id.*, Ex. 29.

By letter of June 29, 2011, DOS informed plaintiff that 13 responsive documents located at the American Embassy in Paris were duplicates of previously released documents; DOS released 22 documents located at the U.S.Consulate in Lyon, two with redactions.  *Id.* ¶ 33.

By letter of June 29, 2011, DOS released eight of 12 documents "maintained on [Mr. Lazaridis]" located at the American Embassy in Athens, three with redactions, and withheld four documents.  DOS withheld information under exemption 6.  *Id.*, Ex. 34.

By letter of July 11, 2011, DOS released 43 of 56 documents pertaining to V.L. located at the Bureau of Consular Affairs, 21 with redactions, and withheld 13 documents.  DOS withheld information under exemptions 5, 6, 7(C), and 7(E).  *Id.*, Ex. 30.

By letter of July 11, 2011, DOS released 102 of 156 documents "maintained on [Mr. Lazaridis]" located at the Bureau of Consular Affairs, 31 with redactions, and withheld 53 documents.  It withheld information under exemptions 5, 6, 7(C) and 7(E).  *Id.*, Ex. 35.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows [through facts supported in the record] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  This procedural device is not a "disfavored legal shortcut" but a reasoned and

careful way to resolve cases fairly and expeditiously.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  When, as here, both parties move for summary judgment, neither party is deemed to "concede the factual assertions of the opposing motion," *CEI Wash. Bureau, Inc. v. Dep't of Justice*, 469 F.3d 126, 129 (D.C. Cir. 2006) (citation omitted); each motion is reviewed "separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," *Family Trust of Mass., Inc. v. United States*, Civ. No. 11-00680, --- F.Supp. 2d ---, 2012 WL 4336238,  at *3 (D.D.C. Sept. 24, 2012) (citation and internal quotation marks omitted).

The FOIA confers jurisdiction on the district court to enjoin an agency from improperly withholding records maintained or controlled by the agency.  *See* 5 U.S.C. § 552(a)(4)(B); *McGehee v. CIA*, 697 F.2d 1095, 1105 (D.C. Cir. 1983) (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980)); *Lazaridis v. Dep't of Justice*, 713 F. Supp. 2d 64, 66 (D.D.C. 2010).  Summary judgment is the frequent vehicle for resolution of a FOIA action because the pleadings and declarations in such cases often provide undisputed facts on which the moving parties are entitled to judgment as a matter of law.  *McLaughlin v. U.S. Dep't of Justice*, 530 F. Supp. 2d 210, 212 (D.D.C. 2008) (citations omitted).  Agencies may rely on affidavits or declarations of government officials, as long as they are sufficiently clear and detailed and submitted in good faith.  *See Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  The Court may award summary judgment solely on the basis of information provided in such affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).  However, the Court must "construe FOIA exemptions narrowly in favor of disclosure."  *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993).

An inadequate search for records also constitutes an improper withholding under the FOIA.  *See Maydak v. U.S. Dep't of Justice*, 254 F. Supp. 2d 23, 44 (D.D.C. 2003) (citations omitted).  Thus, when an agency's search is questioned, the Court must determine the adequacy of the agency's search, guided by principles of  reasonableness.  *See Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998).  The agency is required "to make a good faith effort to conduct a search for the requested records, using methods which can reasonably be expected to produce the information requested."  *Oglesby*, 920 F.2d at 68.  Such methods include following through "on obvious leads."  *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citation omitted).  Although an agency need not search every record system, it "cannot limit its search to only one record system if there are others that are likely to turn up the information requested."  *Oglesby*, 920 F.2d at 68.  Because the agency is the possessor of the records and is responsible for conducting the search, the Court may rely on "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched."  *Valencia–Lucena*, 180 F.3d at 326 (quoting *Oglesby*, 920 F.2d at 68).  Summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search, *id.*, but "the [mere] fact that a particular document was not found does not demonstrate the inadequacy of a search."  *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 390-91 (D.C. Cir. 2007) (citations omitted); *see Iturralde v. Comptroller of Currency*, 315 F.3d 311,

315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.") (citation omitted).

## III.  ANALYSIS

Mr. Lazaridis challenges DOS's search for responsive records and its claimed exemptions.  *See* Mem. of Law in Opp'n to Def. U.S. Dep't of State's Mot. for Summ. J. and in Support of Pl.'s Renewed Cross-Mot. for Summ. J. ("Pl.'s Mem.") [Dkt. 30, ECF pp. 4-34] at 2. In support of his cross-motion for summary judgment, Mr. Lazaridis has contested the facts set forth in DOS's statement of material facts and has set forth his own "Statement of Genuine Issues."  *See* Response to Def. United States Dep't of State's Statement of Material Facts Not in Genuine Issue and Statement of Genuine Issues ("Pl.'s Facts") [Dkt. 30, ECF pp. 35-47].  Mr. Lazaridis does not contend "there is no genuine dispute as to any material fact" and, therefore, has not shown his entitlement to summary judgment.  Fed. R. Civ. P. 56(a).  Hence, Mr. Lazaridis's cross-motion for summary judgment will be denied.

The Search for Responsive Records

Mr. Lazaridis contends first that "DOS has not released any responsive records dating from September 2002 through April 2006 that are held by its OCS division . . . . Thus, it is reasonable to conclude that DOS has not searched for or released at least 500 responsive documents."  Pl.'s Mem. at 9.  In his counterstatement of material facts, Mr. Lazaridis refers to a "Case Summary" that he contends "clearly indicates that such records must exist . . .," Pl.'s Facts at 6, but the exhibit he cites, "Lazardis Decl., Ex. A. Doc. 01 [ECF p. 51]," is a string of e-mail messages that do not support the foregoing assertion.  *See* Fed. R. Civ. P 56(c)(1)(A) (requiring party to support asserted fact by "citing to particular parts of the materials in the record . . . .").

In contrast, Ms. Grafeld describes searches that were conducted of OCS' electronic and paper files, utilizing Mr. Lazaridis's and V.L.'s names and relevant terms, which located 212 responsive documents.  2d Grafeld Decl. ¶¶ 50-53.  Ms. Grafeld's description of the filing systems searched and the search methods employed demonstrates that DOS conducted a reasonable search of the OCS files for responsive records.  Mr. Lazaridis's speculative argument about missing documents does not suffice to raise a material factual dispute about the search.

Mr. Lazaridis contends next that "the DOS search unreasonably excluded from its ambit government records that are held by NCMEC."  Pl.'s Mem. at 10.  This argument has no reasonable basis in fact since, as Mr. Lazaridis admits, *id*., and this Court has found, the National Center for Missing and Exploited Children (NCMEC) is a private entity that is not subject to the FOIA's disclosure requirements, *see Lazaridis v. U.S. Dep't of Justice*, 713 F. Supp. 2d 64, 67-69 (D.D.C. 2010), and DOS's disclosure obligations extend only to those records in its custody and control at the time of the FOIA request.

Mr. Lazaridis has not made any other specific challenges to DOS's searches.  The Court has carefully reviewed Ms. Grafeld's comprehensive description of the searches that were conducted of files maintained by various DOS offices, including the Central Foreign Policy Records, the Office of Passport Services, the Office of Overseas Citizens Services, the American Embassies in Athens and Paris, and the American Consulates in Marseille and Lyon, 2d Grafeld Decl. ¶¶ 13, 36-64, and finds that DOS's searches were reasonably calculated to (and did) locate responsive records.  In the absence of any contradicting evidence, the Court concludes that DOS is entitled to judgment as a matter of law on the adequacy of the search for responsive records.

The Claimed Exemptions

DOS invokes FOIA exemptions 5, 6, 7(A), 7(C), and 7(E) and Privacy Act exemptions (d)(5), (j)(2), and (k)(2) for its withholdings, in full or in part.  2d Grafeld Decl. ¶¶ 67-87; *Vaughn* Index [Dkt. 25-2].  Since an agency cannot withhold records under the Privacy Act that must be disclosed under the FOIA, 5 U.S.C. § 552a(b)(2); *Greentree v. United States Customs Serv.*, 674 F.2d 74, 79 (D.C. Cir. 1982), and DOS properly reviewed and released responsive records under the FOIA, the Court will only address DOS's justifications for withholding information under the FOIA.

As an initial matter, Mr. Lazaridis contends that DOS's *Vaughn* index is not "sufficiently detailed," Pl.'s Mem at 11, but his argument goes more to the merits of DOS's exemption 6 claim than to the adequacy of the index.  *See id.*  Regardless, DOS's *Vaughn* index is more than adequate inasmuch as it correlates the particular exemptions relied upon with the withheld information and, thus, "convey[s] enough information for [Mr. Lazaridis] and the court to identify the records referenced and understand the basic reasoning behind the claimed exemptions."  *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007).  Indeed, Mr. Lazaridis has himself relied on the index in challenging certain withholdings and conceding others.  *See* Pl.'s Mem at 12-14.

Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in discovery, it may be withheld from FOIA requesters."  *Burka v. U.S. Dep't of Health &*

*Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996); *accord Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1112 (D.C. Cir. 2007) (citing cases).  Exemption 5 encompasses materials that would be protected under the attorney-client privilege, the attorney work-product privilege, and the executive deliberative process privilege.  *Formaldehyde Inst. v. Dep't Health & Human Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989), *overruled on other grounds by Nat'l Inst. of Military Justice v. Dep't of Def.*, 512 F.3d 677 (D.C. Cir. 2008).  To qualify for protection under exemption 5 as deliberative process material, a document must be "predecisional," *i.e.,* "generated before the adoption of an agency policy," and "deliberative," *i.e.*, reflecting "the give-and-take of the consultative process."  *Public Citizen, Inc., v. OMB*, 598 F.3d 865, 874 (D.C. Cir. 2010) (citations and internal quotation marks omitted).

In response to the 2006 request, DOS withheld in their entirety seven inter-agency e-mails containing "candid exchanges between Department officials and Embassy personnel about the enforcement of passport rules and regulations."  *Vaughn* Index, ECF p. 8.  In response to the 2007 request, DOS redacted information reflecting "internal deliberations" concerning both Mr. Lazaridis and V.L.'s mother relating to the overarching issues surrounding their daughter's custody.  *See, e.g., Vaughn* index, ECF pp. 9, 11, 13, 19, 21; *see also Lazaridis v. U.S. Dep't of Justice*, 766 F. Supp. 2d 134, 147 (D.D.C. 2011) (describing FBI records compiled "as a result of a criminal investigation into an alleged illegal relocation of Lazaridis's minor child outside the United States, based on authority provided in the International Parental Kidnapping Crime Act of 1993, 18 U.S.C. § 1204") (internal quotation marks omitted); *id*. at 144 (noting "the fact that the [U.S. Attorney's] office declined prosecution does not change the law enforcement purpose for which the records were compiled," namely, "for the law enforcement

purpose of prosecuting Lazaridis for alleged parental kidnapping/interference with parental rights offense") (citations and internal quotation marks omitted).

Ms. Grafeld states that the withheld information is "pre-decisional" and that its disclosure "would inhibit candid internal discussion and the expression of recommendations and judgments." *Id.*; 2d Grafeld Decl. ¶ 68. Such information falls squarely within the deliberative process privilege, which exempts from disclosure documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated," *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975), and "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); s*ee Public Emps. for Envtl. Responsibility v. EPA*, Civ. No. 12-748, --- F. Supp. 2d ---, 2013 WL 677672, at *5 (D.D.C. Feb. 26, 2013) (discussing exemption 5).

Ms. Grafeld states that the responsive documents "contain[] selected factual material intertwined with opinion . . . regarding current problems and preferred course of action," and that "[t]he withheld material . . . has been carefully reviewed and there are no reasonably segregable facts that may be released." 2d Grafeld Decl. ¶ 68. Indeed, most of the documents are described in the *Vaughn* index as one or two-page e-mail messages and memoranda of brief telephone conversations, lending credence to the reasonableness of DOS's segregability assessment. *See, e.g., Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000) (approving the withholding of entire documents when the "exempt and nonexempt information are 'inextricably intertwined,' such that the excision of exempt information would . . . produce an edited document with little informational value") (citation and other internal quotation marks omitted).

Mr. Lazaridis counters that DOS improperly applied exemption 5 "to records that did not consist of deliberations within DOS, or between DOS and its legal counsel." Pl.'s Facts at 8. This argument mistakenly conflates the attorney-client and attorney work-product privileges with the deliberative process privilege. While the two former privileges obviously depend on the existence of an attorney-client relationship, the deliberative process privilege applies broadly to any material "reflecting advisory opinions, recommendations and deliberations comprising part of a process which governmental decisions and polices are formulated." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002). Exemption 5 protects "the give-and-take of the decisional process." *FBI v. Abramson*, 456 US. 615, 630 (D.C. Cir. 1982). Mr. Lazaridis also argues that "[w]hile some of the . . . records might be characterized as pre-decisional with respect to . . . Interpol or the FBI, they are not deliberative with respect to DOS," since "DOS is not a law enforcement authority." Pl.'s Mem. 13. This argument simply ignores exemption 5's language that protects records reflecting both "intra-agency" and "inter-agency" deliberations.

Mr. Lazaridis questions DOS's application of exemption 5 to several documents, *see* Pl.'s Mem. at 12-13, only one of which merits discussion. Doc. 044 is described as a memorandum of "a [telephone] conversation [between DOS and a Michigan Detective] discussing the prospects of action by Michigan law enforcement authorities against Mr. Lazaridis." *Vaughn* Index, ECF p. 33. Since that document reflects neither inter-agency nor intra-agency discussions, the Court does not find exemption 5 applicable. DOS has applied exemptions 7(C) and 7(E) to the same document, thereby raising the possibility that the information may nonetheless be protected. At this juncture, the Court finds that DOS is entitled to judgment as a matter of law on its application of exemption 5 to all of the documents

containing deliberative process material identified in the *Vaughn* index, except Doc. 044 since it does not reflect agency deliberations.

Exemption 6

Exemption 6 permits an agency to withhold from disclosure "personnel and medical files and similar files" if their disclosure would "constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  All information that "applies to a particular individual" would qualify for consideration under this exemption.  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *accord New York Times Co. v. NASA*, 920 F.2d 1002, 1005 (D.C. Cir. 1990) (en banc); *see Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. U.S. Dep't of Justice*, 503 F. Supp. 2d 373, 381 (D.D.C. 2007) ("Congress' primary purpose in drafting Exemption 6 was to provide for confidentiality of personal matters.") (citation and internal quotation marks omitted).  However, "not every incidental invasion of privacy is protected by Exemption 6; only those invasions that implicate private personal details may be precluded." *Akin, Gump*, 503 F. Supp. 2d at 382 (citation omitted).

The proper application of "privacy exemptions [6 and 7(C)] turns on a balance of 'the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny.'" *CEI Wash. Bureau, Inc.*, 469 F.3d at 128 (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 175 (1991)).  Hence, when a requester seeks such information, an agency must conduct a balancing test to determine if releasing the information would constitute a "clearly unwarranted invasion of personal privacy" by weighing the privacy interest in non-disclosure against any qualifying public interest in disclosure.  *Dep't of State v. Wash. Post Co.*, 456 U .S. 595, 596 n.1, 601-02 (1982).  It is this balancing test "not the nature of the files in which the information was contained [that] limit[s] the scope of the exemption."  *Norton*, 309 F.3d at 33;

14

*see id.* at 33 ("assuming without deciding that the requested . . . records are 'similar files' under

Exemption 6").   As the D.C. Circuit instructs:

> To establish that the release of information contained in government files would result in a clearly unwarranted invasion of privacy, the court first asks whether disclosure would compromise a substantial, as opposed to a de minimis, privacy interest.   If a significant privacy interest is at stake, the court then must weigh that interest against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy.   The public interest to be weighed against the privacy interest in this balancing test is the extent to which disclosure would serve the core purposes of the FOIA by contribut[ing] significantly to public understanding of the operations or activities of the government.   Thus, unless a FOIA request advances the citizens' right to be informed about what their government is up to, no relevant public interest is at issue.

*Id.* at 33-34 (citations and internal quotation marks omitted) (alteration in original).

DOS has applied exemption 6 to most of the withheld material, which, with

regard to the 2006 request, is described as information pertaining to health and private contact

information of the child's mother, her attorney's private contact information, and information

about other third-party individuals.  *See generally Vaughn* Index, ECF pp. 1-7.  With regard to

the 2007 request, DOS applied exemption 6 to the foregoing information as well as to

information of broader categories of third-party individuals, including law enforcement

personnel and embassy personnel.  *See generally id.*, ECF pp. 9-38; 2d Grafeld Decl. ¶¶ 70-71.

DOS has shown that the withheld information falls within the personnel, medical

and similar files exemption 6 protects.  *See U.S. Dep't of Defense v. Fed. Labor Relations

Auth'y*, 510 U.S. 487, 502 (1994) ("Because the privacy interest of bargaining unit employees in

nondisclosure of their home addresses substantially outweighs the negligible FOIA-related

public interest in disclosure, we conclude that disclosure would constitute a 'clearly unwarranted

invasion of personal privacy.'"); *Norton*, 309 F.3d at 33 ("Congress intended the phrase 'similar

files' to have 'a broad, rather than a narrow, meaning'. . . . Exemption 6 is designed to protect personal information in public records, even if it is not embarrassing or of an intimate nature[.]") (citation omitted); *see also Akin, Gump*, 503 F. Supp. 2d at 382 ("When the material in the government's control is a compilation of information about private citizens, rather than a record of government actions, there is little legitimate public interest that would outweigh the invasion of privacy because the information reveals little or nothing about an agency's own conduct.").

Mr. Lazaridis argues first that "many of the redacted records concern information that was widely and very publicly disseminated by the very persons whose 'personal privacy' the DOS now seeks to protect."   Pl.'s Mem. at 14.   Under the public domain theory, FOIA-exempt information loses its protection if it was previously "disclosed and preserved in a permanent public record."   *Cottone v. Reno*, 193 F.3d 550, 553–54 (D.C. Cir. 1999) (citations omitted). This doctrine applies only to information that has been "officially acknowledg[ed]," *i.e*., made public through an official and documented disclosure.   *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007).   Mr. Lazaridis has "the initial burden of pointing to specific information in the public domain [by official disclosure] that appears to duplicate that being withheld."   *Id.* (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983) (internal quotation marks omitted)); *accord Valfells v. CIA*, 717 F. Supp. 2d 110 (D.D.C. 2010).

Mr. Lazaridis's public domain argument fails because it is not predicated on an "official and documented disclosure," *Wolf*, 473 F. 3d at 378 (citation and internal quotation marks omitted), which is required to overcome the exemption, but rather on the disclosure of information by the child's mother, whom Mr. Lazaridis has not shown to have any authority to speak or act on behalf of the government.   *See ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 621 (D.C. Cir. 2011) ("[W]e are hard pressed to understand the . . . contention that the release of

a nongovernment document by a nonofficial source can constitute a disclosure affecting the applicability of the FOIA exemptions.").  In addition, the fact that Mr. Lazaridis may have obtained withheld information from an unofficial source or by some other means does not prevent DOS from invoking FOIA exemptions because unlike, for example, a "constitutionally compelled disclosure to a single party," *Cottone*, 193 F.3d at 556, a FOIA disclosure is "to the public as a whole."  *Stonehill v. IRS*, 558 F.3d 534, 539 (D.C. Cir. 2009).  Thus, "the fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm cognizable under a FOIA exemption."  *Wolf*, 473 F.3d at 378 (citation omitted).  To the extent that Mr. Lazaridis is seeking release of exempt material on a waiver theory, the publicity surrounding the child's mother, even if she approved it, cannot be said to constitute a waiver by the agency of its right to invoke FOIA exemptions.  This is because "[i]n most waiver cases, the inquiry turns on the match between the information requested and the content of the prior [official] disclosure."  *Id.*

   Mr. Lazaridis also argues that the release of third-party information redacted from Doc. O49 (the mother's Authorization for Release of Information to Certain Parties 1/26/07) and Doc. O50 (same but undated) "would [] shed light on how government works[,]" by "ascertain[ing] the degree to which DOS has improperly invoked Exemption (b)(6) in the present FOIA case, as well as help clarify the relationship between DOS and the NCMEC, which is presumed to have been invited by [the child's mother] . . . to have access to DOS records about the plaintiff and his daughter."  Pl.'s Mem. at 19-20.  The argument triggers the question of whether an overriding public interest warrants release of the withheld material.

   Disclosure of otherwise exempt information is required when a requester shows that the information is necessary to "shed any light on the [unlawful] conduct of any Government

agency or official." *Reporters Comm.*, 489 U.S. at 772-73; *accord Nation Magazine*, 71 F.3d at 887-88; *SafeCard Services, Inc., v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991). "The relevant question . . . is whether [Mr. Lazaridis] has shown government misconduct sufficient to overcome Exemption [6's] protection for personal privacy under the test outlined in *National Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004)." *Blackwell v. FBI,* 646 F.3d 37, 41 (D.C. Cir. 2011). In *Favish*, the Court explained that a plaintiff "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake" and that "the information is likely to advance that interest." *Favish*, 541 U.S. at 172. Such a showing requires "more than a bare suspicion" of official misconduct; "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id*. at 174. For it is "[o]nly when [such evidence is] produced [that] there [will] exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records." *Id*. at 174-75. Otherwise, the balancing requirement does not come into play. *Id*. at 175.

Mr. Lazaridis's claim of impropriety based on DOS's invocation of this exemption begs the question, and he has not otherwise identified "government misconduct" that would be revealed from the release of the third-party information contained in the authorizations. Hence, the Court concludes that DOS is entitled to judgment as a matter of law on its application of exemption 6 to the third-party information withheld from most of the responsive records.

Exemption 7

FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . ." would cause certain enumerated harms. 5 U.S.C. § 552(b)(7). The

scope of exemption 7 encompasses "both civil and criminal matters," and, for purposes of invoking this exemption, "the FOIA makes no distinction between agencies whose principal function is criminal law enforcement and agencies with both law enforcement and administrative functions." *Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002). Rather, the threshold requirement turns on an assessment of "how and under what circumstances the requested files were compiled . . . and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Id*. at 78 (quoting *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002)).

Since DOS is not a law enforcement agency, its claim that records were compiled for law enforcement purposes is entitled to less deference than that of a law enforcement agency. *See id.* at 77. Nevertheless, it cannot be seriously disputed that at least some of the requested records pertain to alleged international kidnapping charges against Mr. Lazaridis, who has contested such charges in these proceedings and in each of his cases over which the undersigned judge has presided. DOS has invoked exemption 7 sparingly.

Exemption 7(A)

Exemption 7(A) authorizes an agency to withhold law enforcement records "only to the extent that [their] production . . . could reasonably be expected to interfere with enforcement proceedings." § 552(b)(7)(A). The agency must show that release of the records reasonably could be expected to cause some distinct harm to pending or imminent enforcement proceeding or investigation. *See NLRB v. Robbins Tire & Rubber Co*., 437 U.S. 214, 224 (1978); *Butler v. Dep't of Air Force*, 888 F. Supp. 174, 183 (D.D.C. 1995), *aff'd*, 116 F.3d 941 (D.C. Cir. 1997); *Kay v. FCC*, 976 F. Supp. 23, 39 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998). "Under exemption 7(A) the government is not required to make a specific factual

showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding." *Barney v. IRS*, 618 F.2d 1268, 1273 (8th Cir. 1980) (citation omitted). "Rather, federal courts may make generic determinations that, 'with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.'" *Id* . (quoting *Robbins Tire*, 437 U.S. at 236).

DOS applied exemption 7(A) to two documents responsive to the 2006 request, consisting of two pages each, described as "requests for INTERPOL action" relative to "an ongoing enforcement action." *Vaughn* Index, ECF p. 8. Ms. Grafeld states that the information "is contained in Interpol law enforcement documents," and that "the withheld material has been carefully reviewed and no additional non-exempt information may be released." 2d Grafeld Decl. ¶ 74.

Mr. Lazaridis disputes the existence of a law enforcement proceeding, asserting that  "Interpol is not today seeking the plaintiff or his child, since its yellow and blue notices were withdrawn by the originating law enforcement agency, the FBI." Pl.'s Facts at 9.  (To support his assertion, Mr. Lazaridis refers to documents that he has not made a part of this record and, therefore, will not be considered.)  On the other hand, Mr. Lazaridis contends that the "other law enforcement activities to which Interpol documents are alleged to relate" are inapplicable because he "justifiably rejects French child custody decisions . . ." on jurisdictional grounds, *id*. at 9-10, and "has already been held innocent of the kidnapping or illegal retention of his daughter by the competent Greek court." Pl.'s Mem. at 34.  Neither Mr. Lazaridis's unsubstantiated claims nor his subjective views about the courts' decisions present a materially factual dispute with regard to DOS's evidence of ongoing enforcement actions.  Furthermore, in his response to

20

DOS's invocation of exemption 7(C), discussed next, Mr. Lazaridis contradicts his own denials of enforcement proceedings.  In that context, he first alleges that "there are penal proceedings ongoing against [certain] conspirators, in which law enforcement personnel may be implicated." Pl.'s Facts at 10.  Second, he contends that the prosecutor in Ottawa County, Michigan, where the custody proceedings arose, *see Lazaridis v. Wehmer*, 288 F. App'x 800, 801 (3d Cir. 2008), "refuses to dismiss [a] charge . . . ."  *Id.* at 11.  Hence, the Court finds that DOS is entitled to judgment as a matter of law on its withholding of two INTERPOL documents under exemption 7(A).

Exemption 7(C)

Exemption 7(C) exempts law enforcement material "to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  As a general rule, third-party identifying information contained in such records is "categorically exempt" from disclosure.  *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 D.C. Cir. 1995).  In addition, "[a]s a result of Exemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information." *Blackwell,* 646 F.3d at 41 (citing cases); *see Lazaridis*, 766 F. Supp. 3d at 144 (exemption 7(C) shields identities of suspects, witnesses, investigators, and law enforcement officers).  DOS applied this exemption, in conjunction with exemption 6, to "[n]ames and identifying data . . . to protect the personal privacy of personnel of a law enforcement agency."  2d Grafeld Decl. ¶ 76; *Vaughn* Index, ECF pp. 6, 9, 12, 12, 14, 19, 22.

Mr. Lazaridis argues that a public interest outweighs the substantial privacy interests at stake because "[t]he law enforcement officers whose names are being redacted . . .

21

are among those who are aware that there is no probable cause for the plaintiff's arrest, yet they are complicit in permitting the [alleged illegal] proceeding [in Michigan] to continue." Pl.'s Mem. at 25-26. These subjective assertions fail to trigger the balancing requirement not only because they are unsubstantiated but also because they present interests that are clearly personal to Mr. Lazaridis. *See Favish*, 541 U.S. at 172 ("[T]he public interest sought to be advanced [must be] more specific than having the information for its own sake."); *Blackwell*, 646 F.3d at 41 ("Privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated . . . . This is particularly true when the requester asserts a public interest—however it might be styled—in obtaining information that relates to a criminal prosecution."); *see also U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 (1994) (explaining that "whether an invasion of privacy is warranted cannot turn on the purposes for which the request for information is made . . ., except in certain cases involving claims of privilege, the identity of the requesting party has no bearing on the merits of his or her FOIA request" (citations and internal quotation marks omitted)).

       Mr. Lazaridis disputes DOS's withholding of law enforcement officers' telephone and fax numbers where "there is no suggestion that these [numbers] are private, personal numbers," as opposed to "public work numbers for which no expectation of personal privacy exists." Pl.'s Facts at 10. However, the commonly asserted harm associated with disclosing the telephone numbers of law enforcement officers, *e.g.*, possible harassment, does not and cannot turn on whether they are work numbers or private numbers, both categories of which can lead to identifying the respective officer. Furthermore, Mr. Lazaridis has not advanced *any* public interest in the disclosure of such numbers. *See Brown v. FBI*, 873 F. Supp. 2d 388, 403 (D.D.C. 2012) (finding that "any public interest in [Special Agents'] internal [work phone] numbers . . .

22

would in no way illuminate 'what the government is up to,' [and is] de minimis"). The Court concludes that DOS is entitled to judgment as a matter of law on its withholding of the identifying information of law enforcement personnel under exemption 7(C).

Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records that "would disclose techniques and procedures for law enforcement investigation . . . or would disclose guidelines for law enforcement investigations . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). DOS redacted information "that would reveal details of the procedures used to coordinate actions among U.S. and foreign law enforcement agencies," and information "that relates to [DOS's] techniques and procedures to record and communicate information used to protect the integrity of the passport process, over which [DOS] has law enforcement responsibility." 2d Grafeld Decl. ¶ 78.

The District of Columbia Circuit has explained that "[e]xemption 7(E) sets a relatively low bar for the agency to justify withholding: Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42 (alteration in original) (citations and internal quotation marks omitted). Ms. Grafeld concludes only that "[r]elease of [the withheld] information could hamper the use of these procedures in the future." 2d Grafeld Decl. ¶ 78. This vague conclusion coupled with the opaque descriptions in the *Vaughn* index does not show "how the release of the requested information might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42. The Court cannot discern what disclosure could risk circumvention of

23

the law.  Hence, DOS's motion for summary judgment on this claimed exemption will be denied without prejudice.

Record Segregability

The Court is required to consider, *sua sponte*, whether all reasonably segregable portions of the responsive records were released, particularly where documents were withheld in their entireties.  *See Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027-28 (D.C. Cir. 1999); *Valfells*, 717 F. Supp. 2d at 120.  DOS has invoked multiple FOIA exemptions to justify withholding some documents in their entirety.  The Court cannot tell from the current *Vaughn* index which exemption applies to which portion of the document.  Therefore, the Court cannot assess, for example, whether any justification remains for withholding Doc. 044 after having found exemption 5 inapplicable and exemption 7(E) unsubstantiated, and when exemption 7(C) generally shields third-party identifying information but not a whole document.  Hence, the Court will hold in abeyance its segregability assessment and will direct DOS to submit a more detailed *Vaughn* index with regard to documents withheld in their entirety.  If DOS determines that it cannot complete this task without disclosing exempt information, it may submit the documents for *in camera* review.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part DOS's motion for summary judgment and will deny Mr. Lazaridis's cross-motion for summary judgment.  DOS's motion will be granted on the adequacy of the search for records and all claimed FOIA

exemptions except exemption 7(E) and the application of exemption 5 to Doc. 044.  A

memorializing Order accompanies this Memorandum Opinion.


Date:   March 27, 2013                    _____/s/_____
                                          ROSEMARY M. COLLYER
                                          United States District Judge